Lee Stein (#12368)
lee@mscclaw.com
MITCHELL | STEIN | CAREY | CHAPMAN, PC
One Renaissance Square
2 North Central Avenue, Suite 1450
Phoenix, AZ 85004
Telephone: (602) 358-0292
Facsimile: (602) 358-0291
Attorneys for Petitioner

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Alfred Copeland, ) | CV 13-02278-PHX-JJT |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **PETITIONER'S REPLY IN SUPPORT** |
| ) | **OF MOTION TO ADMIT UNSWORN** |
| Charles L. Ryan, et al., ) | **INTERVIEW OF WITNESS DP** |
| ) | |
| Respondents. ) | |
| ) | |

    Petitioner Alfred Copeland was granted an evidentiary hearing by Judge Rosenblatt on two of his counts of conviction based upon the recantation of the two key witnesses on those two counts, Petitioner's daughter DP and DP's daughter, LP. Judge Rosenblatt concluded there was serious doubt that a jury would convict on those two counts if a jury heard the recantations and found them to be credible. [Doc. 28 at 13, 18]

    Because Petitioner has not been able to secure the testimony of DP, for reasons that are no fault of Petitioner and despite diligent efforts to do so, the State is arguing that the Court should simply ignore the only evidence available on the count of conviction involving DP – her own statements. [Doc. 28 at 12 ("The only evidence regarding incest during that particular time came from D.P.")] If Petitioner is in fact innocent on the count of conviction, as concerned Judge Rosenblatt enough to order an evidentiary

hearing, denying Mr. Copeland the limited evidence available to him would work a manifest injustice.

The Court is fortunate to have available to it DP's statements in the form of a recorded telephonic interview, which was transcribed by the State and thus can provide Petitioner the opportunity to demonstrate his actual innocence.  Rule 807 of the Federal Rules of Evidence provides a basis for doing so.  Notably, the State had previously filed the interview transcript it now wants the Court to ignore, urging the Court to read and consider it (albeit for a different purpose).  [Doc. 58, Ex. A]  Now that Petitioner requests the Court to consider the statement, the State wants it excluded.

The State's arguments for keeping the evidence out are not compelling:

1.  "*[T]he declarant did not expressly identify herself as DP.*"  [Doc. 137 at 5]  The State's first argument for not considering the telephonic interview is that the person on the other end of the telephone line may not be DP.  Significantly, the State offers no reason to think that the person who was interviewed was anyone other than DP and there is every reason to believe it was.  Moreover, the State arranged the interview, never questioned the identity of the person on the other end of the line, and most importantly, the person interviewed had a detailed knowledge of the facts, strongly suggesting that it was in fact DP.

2.  "*[T]he statements were not made under oath and nothing about them, or the circumstances of the telephone call itself, indicate DP was obliged or incentivized to tell the truth.*"  [Doc. 137 at 6]  While it is certainly true that DP was not under oath during the telephonic interview, it is not true that she was not incentivized to tell the truth. When DP executed her statement recanting her testimony, Petitioner had been convicted and sentenced to a lengthy term of imprisonment – one he was unlikely to survive given his advanced age.  If her trial testimony were true – that Petitioner abused her as described in her trial testimony, her incentive would be to do nothing so that he would never be in a position to abuse her or anyone else again.  However, if her trial testimony was false, as she has now maintained for several years and which was her position at the

very beginning of the prosecution before she was arrested and taken into custody herself, she would be strongly motivated to correct the wrongs of her trial testimony. She does not live with Petitioner now and there is no evidence that he is providing for her in any way. In fact, the evidence is to the contrary. DP is essentially homeless. Finally, the Court is fully equipped to take into consideration that DP was not under oath when deciding how much weight to give DP's telephonic interview, but that is not a reason to exclude the only evidence available to the Court on her count of conviction.

   3. *"DP's failure to appear at her deposition."* [Doc. 137 at 7] The State faults DP for not making the necessary arrangements to attend the deposition. The State's criticism is misplaced and ignores the realities of DP's life. DP is essentially homeless and without resources even to take a bus across town. DP obviously wanted to attend and reached out to Petitioner's counsel to try to get help with making arrangements to get to counsel's office or to reschedule. If it was not important to her, as the State callously suggests, she would not have attempted to contact counsel. She cannot be faulted for not having the money to get to counsel's office. And certainly, Petitioner should not be punished by exclusion of relevant evidence of his innocence because DP did not have the money for transportation.

   4. *"DP has a motive to lie: she is Petitioner's daughter and had lived with him for most of her life including as an adult."* [Doc. 137 at 8] The State suggests without explanation that DP fabricated her recantation because she lived with Petitioner most of her adult life. While it may be true that DP lived with Petitioner, the State fails to explain how that fact would influence her testimony today. In fact, given Petitioner's current incarceration, DP's prior living arrangements would seem unlikely to motivate her to lie. To the extent the Court is concerned that the familial relationship provides an incentive to lie, the Court can take that into consideration when evaluating the weight of testimony.

   5. *The statements lack sufficient indicia of reliability*. [Doc. 137 at 8] Cross examination is the most effective tool the judicial system has at discovering the truth. Here, the State had every opportunity to fully question DP and took advantage of that

opportunity, exploring in great detail the statements she had provided to the Court, the circumstances surrounding her testimony and the bases for her recantation. Like all other issues identified by the State, the Court can consider the circumstances of the interview in evaluating the weight to give it but is not reason to exclude it altogether, particularly considering the importance of the evidence to Petitioner's actual innocence claim.

DP's testimony is critical to Petitioner's claim of actual innocence, which the Court thought was sufficiently meritorious to grant an evidentiary hearing. It is unlikely that Petitioner will be able to secure DP's testimony any other way, so excluding the telephonic interview will prevent Petitioner from the opportunity to establish his innocence. Doing so is not necessary and would be unduly harsh. The Court is well within its discretion to consider the telephonic interview, while taking into consideration the circumstances surrounding it.

RESPECTFULLY SUBMITTED on October 10, 2019.

MITCHELL | STEIN | CAREY | CHAPMAN, PC

By: *s:/ Lee Stein*
Lee Stein
Attorneys for Petitioner

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2019, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and copy of the transmittal to the following ECF registrant:

Erin Davies Bennett
Gracynthia Claw
Assistant Attorney Generals
Arizona Attorney General's Office
Criminal Appeals Section
2005 N. Central Ave.
Phoenix, AZ 85004

Attorneys for Respondents

  *s:/ B. Wolcott*